UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PHILADEPHIA INDEMNITY INSURANCE ）
COMPANY a/s/o PROSPECT VILLAGE ）
CONDOMINIUM ASSOCIATION, et al., ）
　　　　　　　　　　　　　　　　　　 ）
　　　　Plaintiff(s), ）
　　　　　　　　　　　　　　　　　　 ）　　Case No. 4:22-cv-00642-SRC
　　　　v. ）
　　　　　　　　　　　　　　　　　　 ）
ANGI INC. ）
　　　　　　　　　　　　　　　　　　 ）
　　　　Defendant(s). ）

**Memorandum and Order**

A condominium owner hired a plumber through handy.com, an online platform owned

and operated by Angi Inc.  The plumber's shoddy work massively damaged other units in the

complex, leading the condominium association and its insurer to sue Angi.  Angi moves to

dismiss for failure to state a claim, arguing that the Complaint merely recites the elements of

*respondeat superior* without providing any factual support.  The Court agrees with Angi and

dismisses the Complaint without prejudice.

**I.      Background**

For purposes of the motion to dismiss, the Court accepts as true the following well-

pleaded facts.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Prospect Village

Condominium Association owns the common elements of a multi-unit condominium complex in

Ballwin, Missouri.  Doc. 1 at ¶¶ 2–3.  Prospect insures both the common elements and the

individual units of the complex under a policy provided by Philadelphia Indemnity Insurance

Company.  *Id*.  In February 2022, one of the condo owners used handy.com to request a service

visit from a plumber to work on her condo.  *Id*. at ¶ 8.  Angi owns and operates handy.com.,

through which it arranged scheduling and payment for the service visit.  *Id.* at ¶¶ 8, 9, 17–19.

The plumber made numerous mistakes as he worked on the unit, causing severe water damage to

that unit, several other units, and common areas of the complex.  *Id.* at ¶¶ 10–15.  Prospect

submitted a claim to Philadelphia, which paid over $300,000 to cover repairs.  *Id.* at ¶ 22.

Philadelphia and Prospect sued Angi, alleging negligence and implicitly invoking a

theory of *respondeat superior*.  *Id.* at ¶¶ 24–27.  Plaintiffs allege that Angi, through its employee

and/or agent, the plumber, breached a duty to use reasonable care in performing plumbing work

at the condo, causing the damage Prospect suffered and Philadelphia paid for.  *Id.*  Plaintiffs did

not join the plumber as a codefendant.  *Id.*  Angi moved to dismiss the Complaint for failure to

state a claim.  Docs. 10 & 11; *see* Fed. R. Civ. P. 12(b)(6).  Plaintiffs responded and Angi

replied.  Docs. 12 & 13.

## II.    Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for

"failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule

8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the

pleader is entitled to relief."  To meet this standard, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at

678 (internal quotations and citation omitted).  This requirement of facial plausibility means that

the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v.*

*Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v.*

*Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]"  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555.

### III.    Discussion

#### A.    Arguments

In diversity cases, the Court applies "federal pleading standards . . . to the state substantive law to determine if a complaint makes out a claim under state law."  *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020).  In this case, the parties agree that the alleged tortious acts happened in Missouri, and that Missouri substantive law applies.  *See* Doc. 11 at p. 6 (applying Missouri *respondeat superior* standard); Doc 12 at p. 4 (same).

Angi moves to dismiss for failure to state a claim, arguing that Plaintiffs failed to adequately plead the existence of a principal–agent relationship between Angi and the plumber, Doc. 11 at pp. 4–6, and that Plaintiffs failed to properly allege facts supporting *respondeat superior* liability.  *Id.* at pp. 6–7.  Angi argues that the two theories are "similar, but distinct" under Missouri law, and that Plaintiffs fail to clearly articulate what legal theory the Complaint

rests on.  Doc. 13 at p. 2 n.2; *see* Doc. 11 at pp. 4–5 (listing elements required to demonstrate a

principal–agent relationship); Doc. 11 at pp. 6 (listing elements of *respondeat superior* liability).

In their response, Plaintiffs clarify that the Complaint rests on the theory of *respondeat

superior*.  *See* Doc. 12 at p. 2 ("Simply put, Plaintiffs allege a plausible employer-employee

relationship . . . sufficient to establish a *respondeat superior* theory of liability against Angi.").

Because, as explained below, the Court agrees with Angi that the factual allegations in the

Complaint do not plausibly give rise to relief under the theory of *respondeat superior*, the Court

need not address Angi's alternative argument regarding Plaintiffs' failure to adequately plead the

existence of a principal–agent relationship generally.

**B.    Missouri *respondeat superior* doctrine**

In Missouri, "an employer is liable under the theory of *respondeat superior* for damages

attributable to the misconduct of an employee or agent acting within the course and scope of the

employment or agency."  *McHaffie ex rel. McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. 1995).

"To hold an employer liable under the doctrine of *respondeat superior*, there must be evidence

that a master-servant relationship existed between the parties when the alleged negligent act

occurred."  *Bargfrede v. American Income Life Ins. Co.*, 21 S.W.3d 157, 161 (Mo. Ct. App.

2000).

"A servant is a person employed by a master to perform service in his affairs, whose

physical conduct in the performance of the service is controlled, or subject to the right of control,

by the master."  *Blunkall v. Heavy & Specialized Haulers, Inc.*, 398 S.W.3d 534, 541 (Mo. Ct.

App. 2013) (cleaned up).  The key is the right to control the servant's physical conduct:

> The test to determine if *respondeat superior* applies to a tort is whether the person
> sought to be charged as master had the right or power to control and direct the
> physical conduct of the other in the performance of the act.  If there was no right to
> control there is no liability; for those rendering services but retaining control over

their own movements are not servants. The master-servant relationship arises when
the person charged as master has the right to direct the method by which the master's
service is performed.

*Studebaker v. Nettie's Flower Garden, Inc.*, 842 S.W.2d 227, 229 (Mo. Ct. App. 1992) (internal
citations omitted).

By contrast with a "servant," an "independent contractor" is "a person who contracts with
another to do something for him, but who is not controlled by the other nor subject to the other's
right to control with respect to his physical conduct in the performance of the undertaking."
*Blunkall*, 398 S.W.3d at 541. In other words, "an independent contractor exercises independent
judgment and contracts to do a piece of work according to his or her own methods, without being
subject to the control of his or her employer except as to the result of his or her work." *Summer
Chase Second Addition Subdivision Homeowners Ass'n v. Taylor-Morley Inc.*, 146 S.W.3d 411,
417 (Mo. Ct. App. 2004). *Respondeat superior* liability does not flow through independent
contractors. *Blunkall*, 398 S.W.3d. at 542.

To determine whether an actor is a "servant" or "independent contractor," courts weigh
several factors aimed at assessing the master's "level of control over the agent," including:

> (a) The extent of control which, by the agreement, the master may exercise over the
> details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is
> usually done under the direction of the employer or by a specialist without
> supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and
> the place of work for the person doing the work;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer; and
> (i) whether or not the parties believe they are creating the relationship of master
> and servant.

*Id.* at 541 n.9 (quoting *Mattan v. Hoover Co.*, 166 S.W.2d 557, 564 (Mo. 1942)). "[W]hen . . .
the evidence adduced on the question" permits "a fair difference of opinion as to the existence of

5

the [master-servant] relationship," it is "generally" treated as a "question of fact to be determined by the jury." *Bargfrede*, 21 S.W.3d at 161.

### C.      Plausibility of the alleged master–servant relationship

Angi argues that Plaintiffs' allegation of a master–servant relationship between Angi and the plumber is a mere "legal conclusion[] couched as [a] factual allegation[]." *Id.* at p. 6 (quoting *Twombly*, 550 U.S. at 555).  According to Angi, control is the key aspect of a master–servant relationship, and Plaintiffs make only "bald claims of control by Angi" unsupported by "adequate facts."  Doc. 11 at p. 7.

Plaintiffs agree that the key issue regarding *respondeat superior* liability is Angi's control over the plumber, but argue that they have sufficiently alleged the necessary control.  Doc. 12 at p. 5.  They further protest that Angi is trying to hold them to "an unjustifiable pleading standard" that would make them "prove their case at the pleadings stage," even though the "information at the heart of the [control] analysis is exclusively within [Angi's] possession."  *Id.* at p. 2.  The Court agrees with Angi.

#### 1.      Legal conclusions couched as factual allegations

If magic words sufficed, the Complaint would satisfy the requirements of *respondeat superior* liability under Missouri law.  The Complaint states that "Angi employed [the plumber] to perform the work that caused the loss, which occurred during the course and scope of his employment with Angi."  Doc. 1 at ¶ 16.  This allegation merely recites Missouri's legal test for *respondeat superior* liability.  *Cf. McHaffie*, 891 S.W.2d at 825.  The Complaint also includes allegations that align with the underlying requirement that the master control the servant's conduct:  "Angi directed and controlled [the plumber] in all aspects of the plumbing work to be

performed at [the] unit." Doc. 1 at ¶ 20; *cf. Blunkall*, 398 S.W.3d at 541. Thus, the Complaint recites all elements needed for liability.

But these "threadbare recitals" are not enough to survive a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. These so-called "factual allegations"—which merely fill in the relevant legal tests with the names of Angi and the plumber—are actually "legal conclusion[s] couched as factual allegations." *Twombly*, 550 U.S. at 555. They contain no factual content on which Plaintiffs base their conclusion that an employer–employee relationship between Angi and the plumber existed. Thus, the Court must disregard these allegations in evaluating whether the Complaint plausibly entitles Plaintiffs to relief. *Id.*

To be sure, the Complaint contains some factual allegations—the Court examines those below. But even drawing all reasonable inferences in Plaintiffs' favor, the factual allegations in the Complaint do not plausibly give rise to relief under the theory of *respondeat superior*, because they fail to show the type of control needed for a master-servant relationship under Missouri law. *See Lustgraaf*, 619 F.3d at 872–73.

### 2.  Factual allegations regarding the plumber's negligence

First, the Complaint contains detailed factual allegations of everything the plumber did wrong during his ill-fated service call. Doc. 1 at ¶¶ 10–15. But these allegations do not reflect Angi's control of the plumber's physical conduct or method in the performance of his duties; they do not mention Angi at all. *See id.* If anything, as Angi points out, they show Angi's *lack* of control. Doc. 11 at p. 5. Through all the plumber's mistakes, the allegations indicate that he acted unilaterally without the slightest hint that Angi oversaw or had the right to oversee his "physical conduct" or "method." *See* Doc. 1 at ¶¶ 10–15; *Studebaker*, 842 S.W.2d at 229.

For example, the Complaint alleges that the plumber "realized his soldering tools were ineffective," and later "realiz[ed] his mistakes and that he would not be able to complete th[e]

work." Doc. 1 at ¶¶ 12, 15.  Yet Plaintiffs do not allege that he contacted Angi regarding either development, as he would necessarily have done if Angi controlled his physical conduct and methods.  Instead, these allegations indicate that the plumber completed the job "by his own methods and not subject to the control of an employer except as to the result."  *Kaplan v. U.S. Bank, N.A.*, 166 S.W.3d 60, 66 (Mo. Ct. App. 2003).

### 3.    Factual allegations regarding scheduling and payment

Next, the Complaint contains allegations regarding Angi's role in scheduling and paying the plumber.  Doc. 1 at ¶¶ 17–19.  Specifically, Plaintiffs allege that Angi "scheduled and coordinated the work," "set the terms for payment and collected payment," and "determined the conditions, including the rate and method of [the plumber's] pay and the duration of [his] employment."  *Id.*  Accepting these allegations as true and drawing all reasonable inferences for Plaintiffs, however, these facts still do not show a sufficient level of control.  Missouri courts have repeatedly found that a worker is an independent contractor even when the putative master is intimately involved in details—such as scheduling and payment—so long as the worker is free to determine his own method of completing the services.

In *Lee v. Pulitzer Publishing Company*, for example, a newspaper deliverer entered a long-term contract with Pulitzer Publishing Co. in which Pulitzer provided him with supplies and controlled the price at which he could sell papers, the times and places of delivery, and the performance standards for delivery.  81 S.W.3d 625, 633–34 (Mo. Ct. App. 2002).  Additionally, the deliverer had no distinct and separate business apart from delivering papers for the Pulitzer.  *Id.*  But all this was insufficient to establish a master-servant relationship because the carrier was "neither controlled by Pulitzer nor subject to Pulitzer's control with respect to his physical conduct in the performance of delivering these newspapers."  *Id.* at 634 (quoting *Hougland v. Pulitzer Pub. Co.*, 939 S.W.2d 31, 35 (1997)); *see also Kaplan v. U.S. Bank, N.A.*, 166 S.W.3d

60, 66–69 (Mo. Ct. App. 2003) (finding insufficient control, even though client controlled demolition company's working hours and completion date, could reject non-conforming work, and could direct waste disposal, because demolition company otherwise retained complete control over its physical methods); *Barnes v. Real Silk Hosiery Mills*, 108 S.W.2d 58, 60–62 (Mo. 1937) (finding insufficient control, even though company controlled salesman's territory, prices, and quantities, because company did not control salesman's "physical conduct in soliciting orders").  Accepting as true that Angi told the plumber where to go, when to go, what problem he had to fix there, and how much he would be paid, such directions do not amount to control of his physical conduct or methods, and therefore do not give rise to a master-servant relationship under Missouri law.

### D.     Separate motion to amend needed

Finally, Plaintiffs conclude their brief by requesting, in the alternative, "leave to amend the Complaint accordingly."  Doc. 12 at p. 6.  However, Rule 7(b)(1) requires parties to request court orders by a written motion and "state with particularity the grounds for seeking the order" and "the relief sought."  Fed. R. Civ. P. 7(b)(1)(A)–(C).  And "[c]ourts do not construe a request for leave to amend in a brief as a proper motion for leave to amend."  *Thyssenkrupp Elevator Corp. v. Harlan Co.*, No. 18-CV-02100-SRC, 2021 WL 2476475, at *8 (E.D. Mo. June 17, 2021) (citing *Wolgin v. Simon*, 722 F.2d 389, 394 (8th Cir. 1983)).  The Court therefore cannot, and does not, "rule on the question of amendment."  *See Wolgin*, 722 F.2d at 394.

Regarding Plaintiffs' claim of "an unjustifiable pleading standard," Doc. 12 at p. 2, the Court notes that plaintiffs must perform due diligence before filing a pleading.  *See* Fed R. Civ. P. 11(b) ("By presenting to the Court a pleading, . . . an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed *after an inquiry reasonable under the*

*circumstances*[,] . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." (emphasis added)).  While Plaintiffs may not have a direct relationship with the plumber or with Angi, they do have relationships with other involved actors, so much so that they made detailed allegations about the plumber's work.  While the Court won't instruct Plaintiffs on how to investigate their case, the Court observes that information available to Plaintiffs through the other actors in the case, and perhaps even publicly available information on the internet, may shed light on the relationship between Angi and the plumber.  The Court expects that Plaintiffs will have diligently examined available sources before attempting to amend their Complaint.

## IV.    Conclusion

Accepting as true all well-pleaded factual allegations in the Complaint and drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs fail to plausibly allege a master–servant relationship between Angi and the plumber.  Therefore, Plaintiffs have not stated a claim for negligence under a theory of *respondeat superior*.  Accordingly, the Court grants Angi's [10] Motion to Dismiss, dismissing the [1] Complaint without prejudice.

So Ordered this 22nd day of November 2022.

_SL R. CR_

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE